and Fifth Third Bank. And we have Mr. Greenwald for the appellants. The protocol, I think, as you know, we're following today, is when you argue, you can take your mask off if you like, and then once you're done, you should put the mask back on. All right? So, Mr. Greenwald, I see you have three minutes in rebuttal. You can begin whenever you're ready. Thank you very much, Your Honor. If it pleases the Court, my name is Wayne Greenwald. I represent the appellants, Mr. Labonco and I at N. There's really only one issue on appeal in this court. Did the district court have subject matter jurisdiction over this action when Judge Broderick dismissed it, relying upon- You make it sound like it's going to be so easy. Well, it may be easier than we think, and that's why I'm saying I'm not acknowledging it's easy. When Judge Broderick dismissed it, relying upon this court's decision in Eastern Equipment Services v. Factory Bank, my adversary acknowledges that the district court had jurisdiction. The Supreme Court of the United States acknowledges that the district court had jurisdiction. And as Your Honor acknowledges, all I have to do is convince you. So that is what I have to do. So, Eastern dealt with Section 1334A of 28 U.S.C. This action's jurisdiction was based on 1334B and 28 U.S.C. I don't know that Eastern Equipment, though, made any distinctions like that. In the opinion, it was pretty broad. It wasn't focused on A versus- It may be wrong, but I don't know that you can distinguish it on the basis of A versus B. I can read you the language from the opinion. It basically- I understand. It must be brought- The federal claim must be brought in the bankruptcy court rather than in the district court, which only has appellate jurisdiction over bankruptcy cases. So there was no indication in the opinion that it was focused on A or B, right? Well, he said it very broadly. It's a decision. Eastern does rely on A. So I appreciate what Your Honor is saying, but that being said, if we look at the plain language of 1334A and 1334B, it is clear that the district court has original jurisdiction- Are you saying Eastern is wrong? Forgive me, Your Honor? I'm sorry. Are you saying Eastern is wrong? I am saying that Eastern is wrong, and- Then, therefore, we should somehow distinguish it, have it overruled, tell the Supreme Court to get busy. What do we do? I think the court has to reconsider Eastern. As the court is able to do, there's authority for it from this court. We would only be able to reconsider it if it was intervening Supreme Court law, which I think you're saying is Smith v. Marshall, right? Yes, Stern v. Marshall, which said that the district court has jurisdiction over all matters under Title XI, and in Ponderton v. Newkirk, which is a Third Circuit decision, they agree that specifically motions for actions concerning enforcement of 362A violations are clearly within 1334. Why isn't there a Rooker-Feldman problem, although the district court didn't decide that? Why isn't there a Rooker-Feldman problem? Well, for several reasons. Number one, the Rooker-Feldman doesn't apply, but before I get to that, if I may, that to consider the Rooker-Feldman issue is there's no final order concerning Rooker-Feldman. The denial of Rooker-Feldman, the denial of motion to dismiss on Rooker-Feldman is not a final order. The dismissal of the case based on Eastern is. Rooker-Feldman is jurisdictional, so there's no bar for us considering that as an alternative ground. Tell me why it doesn't apply. It doesn't apply. Fine. It does not apply because, number one, the state court decision was not a final decision. The foreclosure judgment? The decision concerning whether or not the automatic stay applied was not a final decision. No, but the foreclosure judgment was final, and the argument is that you are trying to, in order for you to prevail, that would have to be undone. Except, yes, it would have to be undone, except that that was done in violation of the automatic stay. Also, if I can answer, if I can continue answering Your Honor's question. You're suggesting there's an exception to Rooker-Feldman because here we're dealing with a violation of the automatic stay? Actually, if there's a determination that the automatic stay does not apply, and that determination is done in violation of the automatic stay, everything that follows is a violation of the automatic stay and unenforceable. In re Gruntz, which comes out of the Ninth Circuit, which has been followed in this district as well, excuse me, in the Eastern and Southern districts, in In re Kilmer, Pitts, and Jodayfield Construction Corporation. There's a lot of cases that haven't followed that as well. There's numerous cases that have gone the other way that say the Ninth Circuit is wrong, right? There are cases that disagree with the Ninth Circuit, of course. But as far as this circuit is concerned, I'll say at least the district courts and the bankruptcy courts in this circuit, the final word on whether or not the automatic stay is in effect is with the bankruptcy court, not the state court, and that has generally been recognized. In this case called N. Ray Baldwin in 1985, we said the court in which the litigation claimed to be stayed is pending, has jurisdiction to determine not only its own jurisdiction, but also the more precise question of whether the proceeding pending before it is subject to the automatic stay. So why doesn't it suggest that we don't agree with Gruntz that the Ninth Circuit was wrong? And there's other circuits that have said the Ninth Circuit is wrong, too. Well, the decision that Your Honor just referred to is from 2005, I believe? 1985. 1985. Thank you for correcting me. As I say, the decisions in these – It still counts. Forgive me? It still counts. I'm not saying it doesn't. I'm not saying it doesn't. But there are decisions in the – So we must record that. There are bankruptcy decisions and district court decisions in the NDSIS circuit after that, which basically follow Gruntz and say that we don't have to follow them. Also, to continue answering Your Honor's question, is whether or not the parties had a full and fair opportunity to argue the issue. And that what had happened was, is that after the motion – after the motion for summary judgment was filed, the respondent filed a letter saying that the automatic stay of Mr. Morris' case did not apply. And they never – and my client, the appellants, had no opportunity to respond to that. So they did not have a full and fair opportunity. Also – The full and fair opportunity dealt with the foreclosure, and the N-World report had the full and fair opportunity to what it gave. You were in the foreclosures. They were not parties. They were not named as parties. There was a default entered against N-World in the state case, right? You claimed you were in the foreclosure in your complaint. Well, there was a foreclosure against – You were a tenant. You had an interest in the property. You were named as a party in the foreclosure, were you not? I believe we should have been, but I – No, it's a simple question. Were you named as a party? I do not recall if we were or were not. But your complaint says you were. In which case, we were. You don't recall your complaint? I apologize, but apparently I don't. Okay. All right. There's also one other thought, if I may. You have three minutes in rebuttal. You can make that with your three minutes, okay? Okay. Thank you. All right. We'll hear now from Mr. Lindstrom. Good morning. May it please the Court on the question of Eastern Equipment. I won't argue with you if you think it does provide jurisdiction or that it does defeat jurisdiction. But we think that under 1334B, which says that district courts have original jurisdiction over cases arising to or relating to Title XI, that creates jurisdiction in this case. We, however, agree that the Rooker-Feldman Doctrine means that there is no jurisdiction. The only court that has appellate jurisdiction over a state court judgment, the only federal court, is the U.S. Supreme Court. Under the Rooker-Feldman Doctrine, federal district courts don't have the authority to review a decision of a state court. So I think all four factors of the Rooker-Feldman Doctrine are met here. They are- But we would have to say Gruntz is wrong, right? Gruntz says that if it's entered in violation of the automatic stay, it's effectively void. And therefore, Rooker-Feldman wouldn't apply, right? There's no way to distinguish the Gruntz case, right? I think there is a way to distinguish it. How sure would that be? Which is that in this case, there was no violation of automatic stay. What the state court did is it read 362A and it interpreted that- That's going to the merits, though, right? That's going to the merits of whether, in fact, there was a violation. The question is if that could be litigated here because it would be void, Rooker-Feldman wouldn't apply, right? So I guess there's two ways to think about it. One would be the question that you would have to answer in order to determine whether or not you'd be undermining what the New York State Court does. You'd have to answer that question. That's what the appeal would be about, which means you would- That goes to the fourth factor, or it goes to whether or not you'd be reversing the state court judgment and determining if the state court judgment was an error because in order to say the state court judgment was an error, you would have to look at the merits of the scope of the stay. So that just proves that this does require, would require, this court to sit as an appellate court over the state court judgment because it would require reviewing whether it was right about whether it was a violation of the stay or not. So I think that shows the factor that goes to the review that New York judgment is met. There's no question that while the foreclosure was pending, someone went to the bankruptcy court to try to get them to stop this foreclosure action. Certainly, that would have been available at that time, right? Right, they had several remedies where they could have addressed this. What makes this so crazy is that the LLC that's owned by Mr. Morris files in the Southern District, and there's an application, and there's relief against the stay there by the bank, right? Correct. Right, and then proceeds along, and the bank moves for summary judgment. And before, and is awarded it, but before the judgment's entered, the petition is withdrawn, and the stay is, any issue about the stay is poof, it's gone. Correct, that's the 56 Walker LLC. And then in the intervening period, there's an individual bankers. He filed by the owner of the property which is subject to the mortgage foreclosure. He didn't own the property. But he doesn't own it. Right. An LLC owns it. Correct. But he goes individually bankrupt. And so there's serious questions as to whether the stay even reaches the foreclosure, except as to any exposure that he has for deficiency, which is the nature of the letter which was delivered to the bankruptcy court. And for which Mr. Lobanco and his LLC were, at least the LLC potentially was a creditor, I guess, against Mr. Morris, except for the fact that the lease is with Mr. Morris's LLC. Correct, Your Honor. And they're trying to argue Queensborough, but Queensborough seems to me to be more likely that And so therefore, the LLC's assets, etc., should be considered part of the bankruptcy estate. But what does Lobanco have anything to, where's his standing to raise any of this? He's a stranger to this mortgage. He's a stranger to the debtor for which the stay arose that might interfere or be interfered with. He's not even a creditor of Mr. Morris. That's true of both Lobanco and in World Report. And he objected to a settlement that resolved all of this and didn't pursue the appeal. Right. Nor did he pursue an appeal in the LLC bankruptcy or with regard to the foreclosure. Is that correct? That's correct, Your Honor. Three times.  Yes, Your Honor. Okay. Did you make an application for sanctions? We did not, Your Honor. Okay. I don't know- So if we agreed Easton was wrong, but we found that there was no standing. Standing is jurisdictional hook also. And so therefore, we perhaps not have to necessarily deal with Easton if we resolve it. And his LLC, 54, whatever it is, have no standing. So standing, this is statutory standing we're talking about, not Article III standing. Right. And the Supreme Court has said that that is not, so it's not an Article III issue. So that's why we raised it as an alternative ground. The court absolutely can reach that. I just wanted to clarify that it's- In other cases, we have assumed subject matter jurisdiction to reach a statutory standing issue. Haven't we done that in other cases? I couldn't say whether this court has done it or not. We have. But here, if you do, I would accept that then. So that statutory standing would be an equally valid grounds for dismissing this. Okay. Thank you. Thank you. Thank you. Mr. Greenwald, you have three minutes and rebuttal. Thank you. If I could just address something that the court raised as far as Queenie was concerned. I can't hear you. I'm not, I don't ask you to take, I don't- I'd appreciate it. Thank you. I apologize. No, no, no. I just have trouble hearing you. I apologize. Me too. Thank you. On the Queenie as opposed to Queensberry issue, it's Queenie v. Nygaard, which was decided by this court, which is actually square. Because, as your Honor noted, Mr. Morris owned 100% of 56 Walker. And that meant that the automatic stay applied to 56 Walker as well. Well, that's for the debtor to ask. No, no, no. Forgive me. Well, you're a stranger to the bankruptcy, Mr. Morris. Not exactly. Yes, you are. Mr. Lubanko is definitely a stranger. But it's not- In fact, that's an adjudicated fact, is it not? The creditors of 56 Walker were entitled to protection of the automatic stay as well. The automatic stay protects creditors as well. Bankruptcy court thought the opposite. Bankruptcy court said the exact opposite, right? No, it doesn't. As a matter of fact- It's oral ruling approving the settlement. It's oral ruling approving the settlement. It said that the automatic stay would not apply. Except that Judge Grapper authorized the appellants to continue to commence an action at a later time based upon state violations. I mean, isn't it a fact that Lubanko is not a creditor to Morris? Isn't that a fact? I mean, I believe that that is a fact. And was so adjudicated by the bankruptcy court when he attempted to raise that. So why is he here? Why is he here? Because- What reasonable legal argument can you make that he's here? He is here because he has an interest in 56 Walker's property. He has a lease in 56 Walker's property. His LLC has a lease with it. Not him. He has one as well. He has one as well. He tried to assert a $10 million claim against Mr. Morris and the bankruptcy court dismissed it. But he still had a claim against the entity. As did INN. And that as a creditor of INN, as a party having an interest in an entity that is subject to the automatic stay, they have a claim based upon violation of the automatic stay. All right. And that's in the on pile, and there are other cases that we discussed in a brief, that having a lease gives one an interest in property of the estate. The whole idea of Queenie was to protect Mr. Morris by protecting his entity. If Morris were here and saying that he should have had the benefit of it, I could understand that, but I have a hard time understanding how your client individually has the right to assert Morris' concerns, given the fact that Morris later entered into an agreement to settle all these issues, and you objected, and your objection was never litigated. Well, I don't know how many times you need a bite at the apple. All right. Thank you, Mr. Greenwald. Thank you, Your Honor. Thank you. Thank you, both of you. We'll reserve decision. Have a good day. The next case on the calendar is Gentes v. Ostend and Town of Sprague. And I see we have both sides are on Zoom. Are you able to hear me okay, Mr. Stegman? Yes, Your Honor. Can you hear me okay? Yep. Mr. Talberg, are you able to hear okay? Yes, I can. Can you hear me as well, Your Honor? Perfectly. Thank you. I see, Mr. Stegman, you have reserved three minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor. My name is Todd Stegman. I'm an attorney representing Robert Gentes in connection with this appeal. We claim that this court should reverse the district court's decision. I'm getting a lot of feedback. Is that coming through on your end as well? No. No, but we'll see if we can figure out what's going on. Okay, I'll continue. This court should reverse the district court's decision, staying this case pursuant to Colorado River, as the district court abused its discretion in entering that order. I'm going to start with the issue of whether this federal court case is parallel to the state court case, and I'm going to reference the Rule 28J letter that I filed yesterday afternoon. Have Your Honors received that letter that you filed? Yes, yes, we have. Okay. Okay, very good. So in that case, we brought to this court's attention the decision in Mokry v. Bergston, and in that case, this court held that Colorado River was not applicable because the predicate issue of whether the federal court case and the state court case were parallel was not satisfied, and the reasoning in Mokry is fully applicable here as well. Mokry is a little bit different, isn't it? In Mokry, neither court could ultimately—well, in Mokry, the state court couldn't ultimately decide ownership to the property because Mokry wasn't there, and all that was going on in this—well, not all.